# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN IBN-DON MUMIT TURNER, | : |
| Plaintiff, | : Civ. No. 17-0541 (PGS-TJB) |
| v. | : |
| STEVEN JOHNSON, et al., | : OPINION |
| Defendants. | : |

**PETER G. SHERIDAN, U.S.D.J.**

## I. INTRODUCTION

This matter comes before the Court on Defendants Steven Johnson and Sgt. Doran's motion to dismiss Plaintiff Juan Ibn-Don Mumit Turner's complaint, (ECF No. 28), and Plaintiff's cross-motion to amend his complaint, (ECF No. 31). For the following reasons, Defendants' motion to dismiss is denied and Plaintiff's motion to amend is granted in part. Plaintiff's amended complaint shall be permitted to proceed only on his access to the courts claims against defendants Johnson and Doran.

## II. BACKGROUND

Petitioner is currently incarcerated in New Jersey State Prison ("NJSP") Trenton, New Jersey. On January 26, 2017, he filed a complaint alleging NJSP Warden Stephen Johnson, Third Circuit Clerk Marcia Waldron, and Mailroom Sgt. Doran had interfered with his access to the courts by failing to give him Judge Jerome B. Simandle's, U.S.D.J., opinion dismissing his habeas corpus petition under 28 U.S.C. § 2254 in a timely manner. (ECF No. 1).

According to the original complaint, Judge Simandle denied Plaintiff's habeas corpus petition on August 31, 2015. *See Turner v. Chiesa*, No. 12-5224, 2015 WL 5116764 (D.N.J.

Aug. 31, 2015). Plaintiff alleges he did not receive Judge Simandle's opinion and order until November 3, 2015. *See* Compl. at 3A. Under the federal rules, Plaintiff had 30 days to appeal the habeas denial, or until September 30, 2015. *See* Fed. R. App. P. 4(a)(1)(A). Plaintiff states he did not receive the opinion and order until November 3, 2015.

Plaintiff filed a motion for leave to file an appeal as within time on November 19, 2015. Judge Simandle denied the motion: "The principal issue presented is whether this Court may enlarge the time for appeal in this civil case where the prisoner petitioner did not receive the Court's Order until 63 days after it was entered through no fault of his own, and where he filed this motion to permit the appeal 17 days after receiving the Order. Unfortunately, such relief is precluded by 28 U.S.C. 2107(c) and Fed. R. App. P. 4( )(a)(6), and this Court must deny the motion." *Turner v. Chiesa*, No. 12-5224, 2016 WL 356029 (D.N.J. Jan. 29, 2016), *certificate of appealability denied*, No. 16-1604 (3d Cir. May 25, 2016). Plaintiff's appeal of the § 2254 denial was dismissed by the Third Circuit as untimely. *Turner v. Att'y General of N.J.*, No. 15-3932 (3d Cir.), *cert. denied sub nom Turner v. Porrino*, 137 S. Ct. 507 (2016).

Judge Simandle did not opine as to the definitive reason for the delay: "[a] photocopy of this Court's original mailing envelope . . . bears the postage meter date of mailing as August 31, 2015, the same date as when the Opinion and Order were entered on the docket. The cause for the two month delay in delivery to Petitioner, from August 31, 2015 to November 3, 2015, cannot be determined with certainty —— it may be due to the misaddressed zip code, or to delay within the [NJSP], or both." *Turner*, 2016 WL 356029, at *1. Plaintiff alleges the prison intentionally held up his mail for over two months, causing him to lose his ability to appeal the denial of his habeas petition. This Court dismissed Marcia Waldron from the case in its screening

2

opinion, but permitted the claims to proceed against Warden Johnson and Sgt. Doran. Screening Opinion and Order of March 30, 2017. (ECF No. 3).

Plaintiff filed a motion to expand the record to include documents allegedly showing a pattern of NJSP's interference with his legal mail, including an incident in which Special Investigation Division ("SID") officers confiscated affidavits Plaintiff intended on asserting in a motion for a new trial. (ECF No. 5).[1] Magistrate Judge Bongiovanni granted this motion. (ECF No. 15).

Defendants filed a motion to dismiss on December 31, 2017. (ECF No. 28). The Court originally tried to hold oral argument on this motion on January 24, 2018, but Plaintiff was not prepared to proceed. The Court permitted Plaintiff addition time to file opposition, which he used to file his cross-motion to amend on February 2, 2018. (ECF No. 31). The Court conducted oral argument on April 30, 2018, at which time Plaintiff appeared by telephone. Plaintiff's response to Defendants' opposition was received after argument on May 8, 2018. (ECF No. 42).

### III. LEGAL STANDARDS

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires

---

[1] These allegations form the basis of a separate complaint filed by Plaintiff in this Court, *Turner v. Burak*, No. 17-3189 (filed May 5, 2017). The Court denied Plaintiff's motion to consolidate his complaints on December 4, 2017. (ECF No. 26).

3

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In reviewing the sufficiency of a complaint, the Court must "tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (internal citations and quotation marks omitted). "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a pleading once as a matter of course twenty-one (21) days after serving the pleading or twenty-one (21) days "after a responsive pleading or service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As Plaintiff's time to amend his complaint as of right has expired and Defendants object to amendment, Plaintiff must have leave of Court to amend.

Leave to amend a pleading may be denied where the court finds: (1) undue delay; (2) undue prejudice to the non-moving party; (3) bad faith or dilatory motive; or (4) futility of amendment. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

## IV. DISCUSSION

*1. Original Complaint*

Plaintiff's original complaint is vulnerable to dismissal under Rule 12(b)(6). In order to set forth a prima facie case under § 1983, a plaintiff must show: "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)). Generally, for purposes of actions under § 1983, "[t]he term 'persons' includes local and state officers acting under color of state law." *Carver v. Foerster*, 102 F.3d 96, 99 (3d Cir. 1996) (citing *Hafer v. Melo*, 502 U.S. 21 (1991)). However, "person" is not strictly limited to individuals who are state and local government employees. For example, municipalities and other local government units, such as counties, also are considered "persons" for purposes of § 1983. *See Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 658, 690–91 (1978). A State, agency, or an official of the State acting in his or her official capacity, is not a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). A suit against a public official "'in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . .'" *Printz v. United States*, 521 U.S. 898, 930–31 (1997) (quoting *Will*, 491 U.S. at 71). The claims in Plaintiff's original complaint against defendants in their official capacities are subject to dismissal because they are immune to suit for monetary damages in federal court.

Moreover, Plaintiff's original complaint did not sufficiently allege personal involvement by Warden Johnson and Sgt. Doran. Warden Johnson and Sgt. Doran are in charge of NJSP and the NJSP mailroom, respectively. The original complaint did not set forth facts as to how they each were personally involved in the alleged intentional delay of Judge Simandle's opinion and

order. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

However, "if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). As Plaintiff has moved to amend his complaint, the Court must consider whether his proposed amended complaint cures the deficiencies of the original complaint.

*2. Proposed Amended Complaint*

Plaintiff alleges he began writing remedy forms concerning interference with his mail beginning in September 2014. Proposed Amended Complaint ("PAC") ¶ 14. (ECF No. 31) He alleges that both Warden Johnson and Sgt. Doran were aware of the problems he was having with the mailroom. (*See* ECF No. 31 at 81-86). He states that after filing this lawsuit and his lawsuit in *Turner v. Burak*, No. 17-3189, he requested to be transferred to a different prison so as to avoid defendants in NJSP. *Id.* ¶ 22. He was transferred to East Jersey State Prison ("EJSP") on August 23, 2017. *Id.* ¶ 23.

After being in EJSP for two days, Plaintiff was called to the pass office for "legal mail." *Id.* ¶ 24. Instead of mail, two officers and a Special Investigations Officer were waiting for him to "introduce" themselves. *Id.* According to Plaintiff, he was placed in temporary closed custody within two weeks and transferred back to NJSP. *Id.* ¶ 25. Upon the return to NJSP, he began the process of requesting a job change. *Id.* ¶ 26. He then alleges his property returned from EJSP three weeks later missing a manila envelope containing 35 affidavits from witnesses for his motion for a new trial and copies of remedies Plaintiff had submitted regarding his mail. *Id.* ¶ 27.

6

Plaintiff followed up on his job change request, but the Classification Department said they had not received any of his applications for the paralegal position. *Id.* ¶¶ 29-30.

A few weeks later, Plaintiff was placed in pre-hearing detention after disciplinary charges were filed against him for "attempting conduct which disrupts or interferes with the security or orderly running of the correctional facility." (ECF No. 31 at 43).[2] According to the Disciplinary Report that Plaintiff included with his proposed amended complaint, Plaintiff "was observed on video recording making several advances toward the 2 Left Housing Officers while they were presently involved in a Code 33 staff assault with [another inmate]. [Plaintiff] was on the JPay Kiosk and stood up and walked toward the altercation several times." (ECF No. 31 at 43). According to Plaintiff, these charges "were clearly retaliation from Defendant Johnson." PAC ¶ 33. Allegedly, Sgt. Reardon testified during the hearing that he was told by someone, it was never specified by whom, to issue the charges against Plaintiff. (ECF No. 31 at 48). Plaintiff was informed that his job application was on hold. PAC ¶ 34.

Plaintiff was represented by an inmate paralegal for his disciplinary hearing. The paralegal submitted questions on Plaintiff's behalf, but Plaintiff alleges that Officer Jantz refused to ask Sgt. Reardon some of the questions and changed others. *Id.* ¶¶ 38-39. The paralegal argued the charges were retaliation for the lawsuits and requested dismissal, alleging Officer Jantz had deprived Plaintiff of his due process rights and ability to cross-examine Sgt. Reardon. *Id.* ¶ 41. Officer Jantz found Plaintiff guilty of the charges on December 4, 2017 and sentenced Plaintiff to 100 days administrative segregation, 90 days loss of computation time, and 30 days

---

[2] Plaintiff argues there is no such infraction as an "attempted conduct which disrupts." *But see* N.J. ADMIN. CODE § 10A:4-4.1(a)(1)(xiv) (Prohibited act *.803: attempting to commit, aiding another person to commit or making plans to commit any Category A and or B offense). Prohibited act *.306, "conduct which disrupts or interferes with the security or orderly running of the correctional facility", is a Category B offense. N.J. ADMIN. CODE § 10A:4-4.1(a) (2)(xxix).

loss of recreational privileges. *Id.* ¶ 44. That same day Plaintiff got notice that he was denied the paralegal position due to being in administrative segregation. *Id.* ¶ 47 Plaintiff filed an administrative appeal. *Id.* ¶ 46. Plaintiff's appeal was denied. *Id.* ¶ 49.

He also alleges that he has been placed in "harsh" conditions as retaliation for filing these lawsuits. He alleges that there is no hot water in his wing, and the water in his cell only comes out in drips. *Id.* ¶ 51. He states that prisoners were not provided with bottled water when the City of Trenton was having water problems and notified residents not to drink the water. *Ibid.* He states the meals are small and cold. *Id.* ¶ 52. According to him, his cell is leaking rusted, brown water from the toilet in the cell above him, and there is little to no ventilation. *Id.* ¶ 53. Plaintiff states he has asthma and extreme allergies, but the officers refuse to open one of the windows near his cells to circulate air. *Id.* ¶¶ 53-54. He states he can see roaches and rats "feasting on the trash that never gets cleaned up." *Id.* ¶ 55. He alleges that Sgt. Reardon and Officer Jantz conspired with Warden Johnson to put him in these conditions to retaliate against him for filing lawsuits against prison officials. *Id.* ¶ 57.

Plaintiff has sufficiently alleged a cause of action against an access to the courts claim against Johnson and Doran in their individual capacities. As in his original Complaint, Plaintiff alleges Warden Johnson and Sgt. Doran are responsible for the fact that he lost his ability to appeal the denial of his habeas petition. The factual allegations regarding the petition have not changed, *i.e.*, Judge Simandle denied the petition on August 31, 2015 but Petitioner did not receive a copy of the Opinion and Order until November 3, 2015. PAC ¶ 15. He filed a motion for leave to file an appeal within time, but that was denied on January 29, 2016. PAC ¶ 16. He alleges Johnson and Doran are responsible for the loss of his habeas appeal because of their supervisory positions:

> Due to Defendant Johnson's position during the time of the incident, and the need for authorization regarding said complaint gave him first-hand knowledge of the occurrence, meaning he could only have been the orchestrator or co-conspirator of these violations. Plainly stated, nothing goes on in the [NJSP] w/o the approval or authorization of, Defendant Johnson, and if there is an error committed by any staff member employed by the [NJSP] on any compound, Defendant Johnson has the opportunity to correct it.

PAC ¶ 9. He makes similar allegations about Sgt. Doran, that "nothing goes on in the mailroom area of the [NJSP]" without his approval or authorization and "if there is an error committed by any staff member or correctional officer in the mailroom area," Sgt. Doran "has the opportunity to correct it." *Id.* ¶ 10.

An access to the courts claim requires a plaintiff to plead facts indicating "he has suffered an actual injury to his ability to present a claim. A prisoner can show an actual injury only when a nonfrivolous, arguable claim is lost." *Henry v. Moore*, 500 F. App'x 115, 117 (3d Cir. 2012) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 352–54 (1996)). Additionally, "the claim must relate to either a direct or collateral challenge to the prisoner's sentence or conditions of confinement [and] a prisoner must demonstrate that no other remedy will potentially compensate for the lost claim." *Ibid.* (internal citations omitted); *see also Lewis*, 518 U.S. at 355 ("Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."). Plaintiff argues he has lost his ability to challenge the denial of his habeas petition, so he has sufficiently pleaded this element.

Plaintiff alleges that Johnson and Doran are liable because they are the NJSP Warden and mailroom sergeant, respectively. As previously noted, government officials may not be held liable under § 1983 "solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Unlike in his original complaint, Plaintiff has sufficiently pled

9

personal involvement because Plaintiff alleges he has been writing up remedy forms about not receiving mail since 2014. PAC ¶ 14. (*See also* ECF No. 31 at 83-86). "[W]here a grievance alleges an 'ongoing' constitutional violation, the supervisory official who reviews the grievance is 'personally involved' if he is confronted with a situation that he can remedy directly." *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008). *See also Wassenaar v. Lanigan*, No. 13-1485, 2016 WL 1718191, at *3 (D.N.J. Apr. 29, 2016) (citing cases). "[A]t a minimum, Plaintiff must demonstrate that (1) he made repeated attempts to notify the supervisory defendant, (2) of a sufficiently long, ongoing violation, (3) that could have been remedied by the supervisor." *Id.* at *4. Plaintiff has satisfied this obligation for purposes of his motion to amend. The Court will permit his access to the courts claim to proceed against only Johnson and Doran as he has not sufficiently alleged any of the other proposed defendants were involved.

The PAC does not sufficiently allege retaliation. To allege a retaliation claim, Plaintiff must provide facts suggesting that "(1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action." *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), *as amended* (Mar. 24, 2015) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). Here, Plaintiff has not sufficiently alleged a link between the constitutionally-protected activity, filing a lawsuit, and the disciplinary proceedings, loss of his property, or conditions of his confinement. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267

(3d Cir. 2007). Here, Plaintiff's lawsuits were filed in January and May 2017. According to the PAC the allegedly retaliatory actions began several months later in August 2017. The timeframe does not appear unusually suggestive, so the Court must determine whether it should infer a pattern of antagonism based on the allegations.

Plaintiff concedes in his reply papers that "Defendant Johnson is in no way responsible for the said confiscated manila envelope w/enclosed affidavit which were taken in between Plaintiff being transferred from [EJSP] back to the [NJSP]." (ECF No. 42 ¶ 20). Plaintiff's allegations are fairly conclusory, stating that the charges "were clearly retaliation from Defendant Johnson." PAC ¶ 33. "It is now clear to Plaintiff that Sgt. J. Reardon, and Courtline Hearing Officer L. Jantz, played a 'key role' in conspiring with Defendant Johnson to retaliate w/ malicious intent against Plaintiff by placing him in extreme harsh conditions within the prison . . . because of the litigating actions Plaintiff has taken against prison officials." *Id.* ¶ 57. Plaintiff's allegations regarding retaliation are vague and conclusory and do not sufficiently plead a causal connection between the filing of this lawsuits and the alleged start of the retaliatory actions three months later. None of the submitted exhibits name the proposed defendants as being involved in the retaliation. (*See* ECF 42-1 at 7-10). Matthew Schlusselfeld is not named in the factual portion of the PAC at all beyond a cursory mention that he was working at EJSP when Plaintiff arrived. PAC ¶ 23. Seeing as how Plaintiff alleges he only spent roughly two weeks at EJSP, it is not clear how Schlusselfeld could have been plausibly involved in any retaliation once Plaintiff returned to NJSP. *Id.* ¶ 25.

Moreover, Plaintiff cannot raise a retaliation claim based on his disciplinary charge. Following the precedent in *Heck v. Humphrey*, 512 U.S. 477 (1994), *Edwards v. Balisok*, 520 U.S. 641 (1997) barred § 1983 actions seeking damages and declaratory relief challenging prison

11

disciplinary hearings forfeiting good-time credits. "For the First Amendment retaliation claim to be barred by the *Heck* doctrine, the alleged [retaliatory action] must impugn [Plaintiff's] conviction." *Ashton v. City of Uniontown*, 459 F. App'x 185, 188 (3d Cir. 2012) (barring plaintiff's retaliation claims under *Heck* because litigation over the allegedly retaliatory criminal charges would constitute a parallel litigation over whether plaintiff's conduct warranted the charges). "[I]f [the Court] were to hear the claim, [the Court] necessarily would have to decide whether [Plaintiff's] conviction was valid or was an act of retaliation." *Id.* at 189. Plaintiff alleges defendants charged and convicted him under the prison disciplinary system solely as an act of retaliation.[3] Under *Heck* and *Edwards*, Plaintiff cannot bring this retaliation claim unless and until his disciplinary charge has been overturned. Plaintiff's retaliation claims are dismissed without prejudice as futile.[4] *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.").

The PAC's claims based on the New Jersey Administrative Code are dismissed with prejudice. The portions of the administrative code cited by Plaintiff do not explicitly provide for

---

[3] The Court does not interpret the PAC as raising a due process violation based on Plaintiff's allegations that he was not able to cross-examine Sgt. Reardon. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). Plaintiff would have to bring a separate civil action regarding this claim. As Plaintiff indicated during oral argument that he may be taking his disciplinary charges before the New Jersey Superior Court, Appellate Division, the Court will not sever the complaint at this time.

[4] A letter to the Court requested permission to file another amended complaint. (ECF No. 43). Plaintiff is free to file a motion to amend under Rule 15(a)(2). Plaintiff may also request the appointment of pro bono counsel in a motion by addressing the factors in *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993). In determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155-56, 157 n.5.

a private cause of action. When a statute does not expressly provide a private right of action, New Jersey courts "have been reluctant to infer" such a right. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001). The factors used by courts to determine whether a statute confers an implied private right of action include whether: "(1) plaintiff is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy." *Id.* at 1143. While courts give weight to all three factors, "the primary goal has almost invariably been a search for the underlying legislative intent." *Ibid.* (quoting *Jalowiecki v. Leuc*, 440 A.2d 21, 26 (N.J. Super. Ct. App. Div. 1981)). *See also Ferraro v. City of Long Branch*, 714 A.2d 945, 955 (N.J. Super. Ct. App. Div. 1998) ("[T]he breach of administrative regulations does not of itself give rise to a private cause of action.").

Plaintiff would appear to be among the class of persons for whom the code provision was intended to benefit, *i.e.*, an inmate at a state prison. *See, e.g.*, N.J. ADMIN. CODE § 10A:6-2.1. ("Inmates have a constitutional right of access to the courts. Correctional facility authorities shall assist inmates in the preparation and filing of meaningful legal papers by providing inmates with adequate law libraries or adequate assistance from persons trained in the law."). There is no support that the Legislature intended these provisions to provide a basis for a civil suit for damages, or authorized the Commissioner of the Department of Corrections to create a basis for state civil liability in the administrative code.[5]

---

[5] The Legislature delegated rulemaking authority to the Commissioner: "The commissioner, as administrator and chief executive officer of the department, shall Formulate, adopt, issue and promulgate, in the name of the department such rules and regulations for the efficient conduct of the work and general administration of the department, the institutions or noninstitutional agencies within its jurisdiction, its officers and employees as may be authorized by law." N.J. STAT. ANN. § 30:1B-6(e).

## V. CONCLUSION

For the reasons stated above, the motion to dismiss is denied, and Plaintiff's cross-motion to amend is granted. The amended complaint shall be filed and shall proceed only on the access to the courts claims against defendants Johnson and Doran.

An appropriate order follows.

DATED: June 11, 2018

PETER G. SHERIDAN
United States District Judge